# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

RON ERICKSON,

      Plaintiff,

                                 Case No. 2:17-cv-360
                                 Chief Judge Edmund A. Sargus, Jr.
      v.                          Magistrate Judge Chelsey M. Vascura

HOCKING TECHNICAL COLLEGE, *et al.*,

      Defendants.

## OPINION AND ORDER

This matter came before the Court for a telephonic discovery conference on March 12, 2018.  (*See* ECF No. 23.)  During that conference, the parties informed the Court that they disputed whether discussions during certain meetings Nicki Dioguardi (Defendant Hocking Technical College's former General Counsel, Human Resources Director, and Vice President of Risk Management) attended are protected by the attorney-client privilege.  Plaintiff, Ron Erickson (the former President of Defendant Hocking Technical College), seeks to depose Ms. Dioguardi regarding these discussions, but Defendants object, asserting that the discussions are protected by the attorney-client privilege.  Subsequent to that conference, the parties conducted limited discovery relating to the capacity in which Ms. Dioguardi was operating during the meetings at issue.  The parties then submitted letter briefs *in camera*.  This matter is now before the Court upon the parties' letter briefs and supporting documentation.  For the reasons that follow, the Court finds that the at-issue communications are not protected by the attorney-client

privilege.  Accordingly, Plaintiff's request for an order compelling Ms. Dioguardi's testimony regarding the discussions during these meetings is **GRANTED**.

## I.

The attorney-client privilege is recognized as the oldest privilege relating to confidential communications.  *Upjohn v. United States*, 449 U.S. 383, 389 (1981).  Its purpose is to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice."  *Id.*  In *Upjohn*, the United States Supreme Court explored the contours of the attorney-client privilege as it relates to corporate employees.  449 U.S. at 386–97.  In rejecting the "control group test," the Supreme Court emphasized that "the privilege exists to protect not only the giving of legal advice to those who can act on it but also the giving of information to the lawyer to enable him [or her] to give sound and informed advice."  *Id.* at 390.  As the Supreme Court recognized, "[t]he first step in the resolution of any legal problem is ascertaining the factual background and sifting through the facts with an eye to the legally relevant."  *Id.* at 390–91.  In light of *Upjohn*, "it is now well settled that private corporations and other organizations may constitute clients for purposes of the attorney-client privilege."  *Reed v. Baxter*, 134 F.3d 351, 356 (6th Cir.), *cert. denied*, 525 U.S. 820 (1998).

The Sixth Circuit Court of Appeals articulated the following test to determine whether a communication is privileged: "(1) where legal advice of any kind is sought (2) from a professional legal adviser in his [or her] capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his [or her] insistence permanently protected (7) from disclosure by himself [or herself] or by the legal advisor, (8) unless the

protection is waived." *Reed*, 134 F.3d at 355–56 (citing *Fausek v. White*, 965 F.2d 126, 129 (6th Cir.), *cert. denied sub nom. Selox, Inc. v. Fausek*, 506 U.S. 1034 (1992)).

In addition, "the mere fact that in-house counsel is present at a meeting does not shield otherwise unprivileged communications from disclosure." *Neuder v. Battelle Pac. Nw. Nat'l Lab.*, 194 F.R.D. 289, 293 (D.D.C. 2000). Rather, the attorney-client privilege "applies only to communications made to an attorney in his capacity as legal advisor." *Id.* at 292. "Where business and legal advice are intertwined, the legal advice must predominate for the communication to be protected." *Id.* at 292. In determining whether communications made in counsel's presence are privileged, courts have considered whether counsel serves dual roles for the corporation. *Naik v. Boehringer–Ingelheim Pharm., Inc.*, No. 07–c–3500, 2008 WL 4866015, at *2 (N.D. Ill. June 19, 2008) (concluding that communications were not privileged, partly because "there is no suggestion that BIPI's in-house counsel was serving on a committee charged with considering employment issues").

Furthermore, "[t]he burden of establishing the existence of the privilege rests with the person asserting it." *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999). Simply asserting that information is privileged "is insufficient to meet the burden." *In re Trans–Indus., Inc.*, No. 1–10 MC 24, 2011 WL 1130410, at *4 (N.D. Ohio Mar. 28, 2011). Rule 26 of the Federal Rules of Civil Procedure requires a party who seeks to withhold otherwise discoverable information on the basis of privilege to assert a claim of privilege and "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A); *see also Cooey v. Strickland*, 269 F.R.D. 643, 649 (S.D. Ohio 2010) (citing *In re Search Warrant Executed at Law Offices of Stephen Garea*,

No. 97–4112, 1999 WL 137499 (6th Cir. Mar. 5, 1999) ("The privilege log must be detailed enough to prove that the communications in question were in fact confidential communications relating to legal advice.").

## II.

In this case, Plaintiff seeks to depose Ms. Dioguardi regarding discussions during a September 12, 2014 meeting and also six executive sessions. The Court considers each in turn.

**A. September 12, 2014 Meeting**

Plaintiff first seeks to depose Ms. Dioguardi regarding discussions during a September 12, 2014 meeting between Plaintiff, Ms. Dioguardi, Andy Stone, and Keith Taulbee. Messrs. Stone and Taulbee serve on Defendant Hocking Technical College's Board of Trustees. Plaintiff represents that he called the meeting in order to "discuss [Gina] Fetty's employment, not for legal advice." (Pl.'s *In Camera* Br. 6 (citing Erickson Decl. Ex. 3 at ¶ 5).)

Defendants contend that the attorney-client privilege attaches to that meeting because "Plaintiff invited Dioguardi [to the meeting] for the purpose of gathering or soliciting legal advice for the college." (Defs.' *In Camera* Br. 8-9.) In her Declaration, Ms. Dioguardi states that Plaintiff "told [her] that the purpose of the meeting was to share his decision to terminate Chief Financial Officer Gina Fetty." (Dioguardi Decl. ¶ 6.) Defendants point out that both Ms. Dioguardi and Mr. Taulbee believe that Plaintiff invited Ms. Dioguardi to the meeting not as a human resources matter, but "to attend and gather information so that she could advise the board concerning the legal issues resulting from the termination decision." (Defs.' *In Camera* Br. 8-9 (citing Dioguardi Decl. at ¶ 7; Taulbee Decl. at ¶ 4.) Defendants further submit that an email Plaintiff sent on September 15, 2014, that he marked "Attorney-Client Privileged Information,"

(*Id.* at Ex. 5), serves as additional evidence showing that Plaintiff intended the communications during the September 12, 2014 meeting to be subject to the attorney-client privilege.  (*Id.* at 5.)

The Court finds that Defendants have failed to satisfy their burden to demonstrate the existence of the attorney-client privilege with respect to the September 12, 2014 meeting.  In support of their arguments, Defendants rely upon *Alomari v. Ohio Department of Public Safety*, No. 2:11-cv-00613, 2013 WL 4499478 (S.D. Ohio Aug. 21, 2013).  The present case is distinguishable from *Alomari*.  In *Alomari*, the record contained evidence reflecting that the plaintiff was aware of the purposes for which counsel was present.  *Id.* at *3 (noting that "Plaintiff's testimony indicates that he was sufficiently aware that the purpose of the meeting was to provide information to counsel").  Here, in contrast, the record reflects that Plaintiff called the meeting to "discuss Fetty's employment, not for legal advice."  (Pl.'s *In Camera* Br. 6 (citing Erickson Decl. Ex. 3 at ¶ 5).)  Consistently, Ms. Dioguardi states that Plaintiff "told [her] that the purpose of the meeting was to share his decision to terminate Chief Financial Officer Gina Fetty."  (Dioguardi Decl. ¶ 6.)  Significantly, Ms. Dioguardi does not indicate that Plaintiff asked her to attend in her capacity as a legal advisor rather than in her capacity as Human Resources Director or Vice President of Risk Management.  Nor does Ms. Dioguardi state that she was asked to provide legal advice; to the contrary, she states that she "did not speak and no one asked [her] any questions."[1]  (*Id*. at ¶ 7.)  That Ms. Dioguardi subjectively believed that she was at the meeting in her capacity as counsel to gather information is insufficient to confer the privilege.

---

[1] The Court notes that Plaintiff's assertion that the communications are not subject to the attorney-client privilege because Ms. Dioguardi did not give any legal advice at the meeting lacks merit.  (*See* Pl.'s Br. at 5.)  Although an important consideration, whether legal advice is rendered as a part of a communication is not dispositive.  *See Reed*, 134 F.3d 355-56 (providing test for attorney-client privilege, which includes communications where legal advice is merely sought).

*See United States ex rel. Parikh v. Premera Blue Cross*, No. C01-476P, 2006 WL 3733783, at

*4, 7-8 (W.D. Wash. Dec. 15, 2006) (attorney's declaration that he attended meetings as

representative of legal department did not resolve attorney-client privilege question when

evidence did not show that other employees in attendance understood him to be acting in legal

role). *See also Reed*, 134 F.3d at 355 (providing that the first element of attorney-client privilege

is that legal advice be sought); *Alomari*, 2014 WL 12651191, at *4 (stating that the Court "did

not merely rely on one party's subjective belief as to whether the communication is privileged,"

but also on "on the testimony of Plaintiff and Plaintiff's supervisor"). In addition, the September

15, 2014 email, drafted three days *after* the at-issue meeting, does not operate to retroactively

render the earlier, otherwise-unprivileged discussions subject to the attorney-client privilege.[2]

In summary, the Court finds that discussions during the September 12, 2014 meeting are

not protected by the attorney-client privilege.

**B.      Executive Sessions**

Plaintiff next seeks to depose Ms. Dioguardi regarding discussions during six executive

sessions held on the following dates:  May 27, 2014; June 26, 2014; August 5, 2014; September

23, 2014; October 2, 2014; and October 27, 2014.  Defendants assert that all discussions during

these meetings are protected by the attorney-client privilege.  In support of their argument,

Defendants cite Ms. Dioguardi's declaration in which she states that "[w]hen the Board invited

her into the meetings, [she] believed [she] was there in [her] role as legal advisor to the College

and to advise the Board on the issues they entered into executive discussion to discuss."  (Defs.'

Br. at 11 (citing Dioguardi Decl. ¶ 11).)  Defendants also highlight a letter Ms. Dioguardi

authored and sent to the Board on September 22, 2014, in which Ms. Dioguardi informs the

---

[2]Moreover, the September 15, 2014 email relates to a conversation that happened earlier
that day, not the September 12, 2014 meeting that is at issue here.

board that she is available as their counsel to assist them. (Defs.' Br. at 11 (citing Dioguari Decl. Ex. 1).)

The Court likewise finds that Defendants have failed to satisfy their burden to demonstrate the existence of the attorney-client privilege with respect to the six at-issue executive sessions. As set forth above, Ms. Dioguardi's subjective beliefs, without more, do not satisfy Defendants' burden. Once again, the record contains no evidence reflecting that Ms. Dioguardi was asked to attend in her capacity as a legal advisor rather than in her capacity as Human Resources Director or Vice President of Risk Management. Nor does record reflect that Ms. Dioguardi provided or was asked to provide legal advice at these meetings. The September 22, 2014 letter Ms. Dioguardi authored does not persuade the Court to reach a different conclusion. Although Ms. Dioguardi informs the board that she is *available* to act as counsel and provide legal advice, it contains no indication that she was invited to the executive sessions for the purpose of providing legal advice.

In summary, the Court finds that discussions during the six at-issue executive sessions are not protected by the attorney-client privilege.

## III.

For the reasons set forth above, the Court finds that Defendants have not satisfied their burden to demonstrate that the discussions during the September 12, 2014 meeting and the six at-issue executive sessions are protected by the attorney-client privilege. Accordingly, Plaintiff's request for an order compelling Ms. Dioguardi's testimony regarding the discussions during these meetings is **GRANTED**.

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE